**WOLF & WOLF, LLP**
Edward H. Wolf (EHW-0656)
Jason M. Wolf (JW-6332)
910 Grand Concourse, Ste. 1F
Bronx, New York 10451
(718) 410-0653

*Attorneys for Plaintiff Aminah Lucio*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------x    Case No.

AMINAH LUCIO,

                    Plaintiff,

     -against-

NEW YORK CITY DEPARTMENT OF
EDUCATION ("DOE") and MARIE DOUYON,

                    Defendants.
----------------------------------x

**12 CIV 0247**

**JURY TRIAL DEMANDED**

**COMPLAINT**

Plaintiff, AMINAH LUCIO, by her attorneys WOLF and WOLF LLP, complaining against the Defendants, NEW YORK CITY DEPARTMENT OF EDUCATION ("DOE") and MARIE DOUYON, alleges and states as follows:

## NATURE OF THE ACTION

1. On March 19, 2011, Plaintiff filed a verified complaint with the New York State Division of Human Rights ("SDHR") charging the above named Defendants with unlawful discriminatory practice(s) relating to employment because of her national origin and opposition to discrimination/retaliation, and race/color in violation of N.Y. Exec. Law, art. 15 (Human Rights Law). The complaint was dually filed with the U.S. Equal Employment Opportunity Commission ("EEOC") under Charge No. 16B002699. The

"SDHR" rendered a decision *finding of probable cause* for the Complainant (Plaintiff herein.) Plaintiff then filed a request for administrative dismissal, and upon such request being granted, and within 90 days of receiving the Right to Sue Letter, the Plaintiff filed the instant complaint.

## JURISDICTION AND VENUE

2.  The jurisdiction of this Court over this controversy is invoked pursuant to Title VII of the Civil Rights Act [42 U.S.C.A §§2000(e) et seq.], the New York State Executive Law [§296 et seq.], and the New York City Human Rights Law [New York City Commission on Human Rights (Title 8)], in addition to 29 U.S.C. § 2617, 28 U.S.C. § 1331, and 28 U.S.C. §1367 (pendent state and city law claims).

3.  The unlawful employment practices described herein were committed within the State and City of New York, in defendants' offices in New York, New York. Accordingly, venue in this Court is proper pursuant to 28 U.S.C. § 1391(b).

4.  On or about April 11, 2011, William LaMot, a Director of the Bronx Headquarters for the State Division of Human Rights located at Fordham Plaza, 4th Floor Bronx, N.Y. 10458, signed a nineteen (19) page determination in which he found Probable Cause in favor of Plaintiff[1].

5.  A Notice of Claim and an Amended Notice of Claim were timely filed.

6.  A "Right to Sue" letter dated October 10, 2011 was received on October 13th, and this complaint was timely filed within 90 days from the receipt thereof.

---

[1] All documents will be presented during discovery and will simply be referred to at this time in the complaint.

7.      The Defendant DOE was fully aware of the unlawful employment practices at all times as a result of complaints made by a) seven employees, on information and belief, to the Chancellor's Office based on a hostile work environment; b) former employees who stated that they left due to one supervisor Douyon's hostile environment, on information and belief, a Haitian or of Haitian lineage; and c) the record of the SDHR.

8.      Upon information and belief, at all times hereinafter mentioned, the Defendants were represented by counsel.

## PARTIES

9.      At the present time, Plaintiff, Aminah Lucio, an African American female, is a resident of the City of New York, employed for the last 15 years by the defendant New York City Department of Education (DOE) assigned as a psychologist. Formerly, Plaintiff was a provisional Supervisor of Psychologists, a group of extremely high-performing psychologists who supervise psychologists in the schools.

10.     The DOE is an agency of the City of New York, organized under and by virtue of the laws of the State of New York for the purpose of educating the children attending public school in the City of New York. Its principal offices are located at 52 Chambers Street, New York, New York 10007.

## FACTS COMMON TO ALL COUNTS

11.     The DOE is also subject to the *New York State Education Law*, particularly *Education Law* 2590 *et seq.* and is responsible for the conduct of its supervisors and employees.

12.     Plaintiff is an employee of defendant within the meaning of the Federal, State, and City antidiscrimination laws at all times relevant to this action. Other relevant

statutes include 29 U.S.C. § 2615(a) (2), 29 U.S.C. § 2617 (a)(3), 42 U.S.C. 1981, 42 U.S.C. 2000(e) et seq., Article 15 of the New York State Human Rights Law, and Title 8 of the NYC Administrative Code.

13.     At the time of filing plaintiff's State Division of Human Rights (SDHR) complaint on or about March 19, 2010, Plaintiff had been employed as a provisional *supervisor* of psychologists in various schools with offices at Fordham Plaza Bronx NY, 10458, in charge of more than 60 who serviced a major proportion of the more than 330 schools in the Bronx. Plaintiff's salary exceeded One Hundred Thousand Dollars ($100,000) a year equaling, on information and belief, that of a principal.

14.     By 2009-2010, Plaintiff had been assigned 84 sites (20 to 34 more schools) than any than other Bronx employee serving in the same capacity.

15.     The survey of principals known as the Principal Satisfaction Survey published every two months indicated that the principals in the schools Plaintiff's team served were satisfied with more that 85% of the services rendered by the team, which exceeded the benchmark established by the Department for Citywide Services.

16.     Every year, each employee of the DOE holding teaching positions and higher is given what is known as an Annual Performance Review. For provisional employees, tenure is granted when he or she completes several years with "Satisfactory" ratings depending on the job title held. If the rating is "Unsatisfactory", a provisional employee might be terminated.

17.     Until the 2008-2009 academic year, Plaintiff was subject each year for such a review and, up until the facts surrounding this suit, had always been given satisfactory ratings with no disciplinary letters to her file. Plaintiff had been continuously

promoted to jobs which required more complex interpersonal interaction emblematic of a "team player" with no difficulties from her former supervisors.

18. Ms. Marlene Siegel, Chairperson of the Bronx ISC, was Ms. Douyon's chairperson.

19. Defendant was employed as a Supervisor of Psychologists on April 6, 2006. Defendant Marie Douyon Defendant was employed as the Deputy Director of Special Education for the DOE at all times relevant to this action, and was plaintiff's supervisor for at least two academic years.

20. Defendant Marie Douyon had the power to make personnel decisions regarding Plaintiff's employment.

21. Ms. Douyon directly supervised 31 employees; of these, 12 are identified as Black, 9 as Caucasian, and 2 as Hispanic.

22. At all times hereinafter stated, Ms. Douyon reported that Plaintiff was competent in the performance of her job.

23. Three Supervisors of Psychologists have filed discrimination complaints with the EEOC and State Division of Human Rights against the Department of Education and Ms. Douyon for reasons hereinafter set forth.

24. Among those three employees who filed with the SDHR, two were African American women - one of which was plaintiff.

25. Ms. Douyon was excessively and unfairly punitive, disrespectful, and generally cruel to Plaintiff and other African Americans, and actually participated in discriminatory treatment, and aided and abetted the unlawful conduct described herein. In simple parlance Ms. Douyon treated Plaintiff and other African American Supervisors

not as highly skilled licensed professionals but administrative assistants or students in an elementary school. Douyon would turn trivial matters into insubordination.

26. In addition to alleged discipline issued to Plaintiff, the following incidents, *inter alia,* establish Ms. Douyon's racial and ethnic bias to African-Americans:

a. On or about September 4, 2009, Ms. Douyon called African-American employee Violet Lipford into her office with Ms. Rupnarain. On information and belief, after closing the door, a conversation was had stating that Ms. Rupnarain heard that Ms. Lipford was slandering and misrepresenting her, and therefore was untrustworthy. In addition, a decision was made to change Ms. Lipford's seat from immediately outside her personal office because she didn't want Ms. Lipford around her. There was no investigation of the allegations that led to Ms. Lipford's change of seat.

b. On information and belief, on or about September 14, 2009, Ms. Douyon described how somehow she saw a staff person walking to the garage with files and papers in her arm. This comment was made at a meeting in which she referred to vandalism. The implication being that a staff member was stealing materials.

c. On information and belief, on that same date, Ms. Douyon stated that there was an act of vandalism involving the water cooler in Plaintiff's unit. An employee whose desk is next to the cooler, in opening the bottom drawer of the file cabinet repeatedly, caused one of the prongs of the three pronged electrical plug to weaken and eventually break off. When it came to the attention of Ms. Douyon she stated during a meeting of all the supervisors and administrators in the department that someone was tampering with the water cooler purposefully or maliciously as an "act of vandalism" in an attempt to have her "electrocuted." She further stated, "I just want you to know who

you are working with!" Ms. Douyon had to have been referring to the African American woman whose files were in that drawer, such as Violet Lipford.

  d. On information and belief, on or about October 1, 2009, Douyon called an "emergency meeting" summoning everyone in from the field. Her agenda concerned her own statement that "her department has the highest turnover rate of administrators and supervisors in the entire city, but it wasn't because of her." Then, she went on to say, she did "not care who left to go elsewhere and you are either with me or against me!" There was no other topic of discussion or reason for having called all supervisors in to the office from their respective school visits on that day.

  e. On information and belief, on or about November 9, 2009 Ms. Douyon stated that there was a "gang" and "street mentality" that "almost got Madeline Ortiz fired!" Ortiz (a data analyst) sat between two African-American women who had assisted her in writing a response to Ms. Douyon's email request. Ms. Douyon stated, that based on the tone of the e-mail, she could tell it wasn't authored by Ms. Ortiz.

  f. On information and belief, on that same day, Ms. Douyon also stated that someone had attempted to break into the supply closet. She then stated "Although there is a camera in the office, I am choosing not to view it and find the person who attempted to break into the supply closet. I just want you to know who you are working with; the kind of people you work with." It should be noted that the supply closet was not broken into, nor was there any sign that it had been jimmied or vandalized. No camera exists in that office.

  g. On information and belief, on or about Friday, November 6, 2009, at 3:45 pm, Ms. Douyon overheard the supervisors getting ready to go home at their scheduled

departure time and saying "let's go home" to one another. On November 9, 2009, Ms. Douyon stated that she has the right to ask people to stay if she wanted to. She then added that the supervisors that got up to leave were setting a bad influence. It should be noted that Ms. Douyon did not ask anyone to stay. Plaintiff was among the supervisors who got up to leave and was accused of setting a bad example for others.

  h. On information and belief, on or about November 17, 2009, Douyon yelled at African-American CSE Chairperson Rosetta Brownlee so loud that she could be heard on the entire outer office berating this employee. At that point, Ms. Brownlee resigned due to the stress then retracted her resignation two day later. Ms. Brownlee was often scolded and undermined in front of her subordinates.

  i. On information and belief, at the end of one workday, several of the supervisors on their way out were talking casually to one another in the lobby. The next day, at a meeting Ms. Douyon stated to Plaintiff and others, "once you leave this office, if you are hanging out in the lobby, you are trespassing." Consequently, Plaintiff and others were accused of being criminals engaging in criminal conduct because they were talking to each other on their way out.

  j. On information and belief, Ms. Douyon accused two African-American women of theft of services. After a full investigation by the Special Commissioner of Investigations for the NYC School District, both individuals were cleared of any wrong doing. One of the women investigated was eight months pregnant and she was subjected to extreme anxiety concerning her tenure in her position. The other African American woman was seeking employment opportunities during the citywide DOE restructuring period and was often turned away from positions. It should be noted that an open State

Commission on I investigation may have contributed to this person not being considered a viable candidate.

  k. On information and belief, on or about December 2009, Ms. Douyon followed an African American employee, Helena Hawkshawe, to the bathroom and peered through the crack in the stall in which the employee had entered. Ms. Douyon stared into the stall for about 5 to 10 seconds. When Ms. Hawkshawe exited the stall, Ms. Douyon blocked her exit from the stall to such an extent that Ms. Hawkshawe had to go around her. During the December 9, 2009 meeting, Ms. Douyon yelled "there is a clique in here, a gang, and I want it dispersed now."

  l. On information and belief, during the January 4, 2010 cabinet meeting, Ms. Douyon made the Plaintiff and other supervisors sit through a power-point presentation on Narcissism (a psychiatric disorder) concluding that she put together the presentation because "some of the people in our [midst] had this personality disorder and we would be delving further into this mental disorder in the coming weeks." She added that it was her responsibility to see that the supervisors could work together as a group – so in order to accomplish this, the supervisors would focus on narcissism in the coming weeks.

  m. On information and belief, during this same meeting, Ms. Douyon stated, "you people should be careful about who you hang around with and who you were seen with." The common theme has been to malign individuals and create a rift which she then seeks to document in order to deflect from her own discriminatory practices.

  n. Ms. Douyon persistently complained of plaintiff concerning her "tone" while conceding the satisfactory performance of supervising 66 then 84 schools.

27. On June 26, 2009, Plaintiff spoke with Marlene Siegel, Ms. Douyon's supervisor to complain about Douyon's treatment.

28. On June 30, 2009, the last day before plaintiff's summer break, and four days after the close of the school year, Ms. Douyon held a disciplinary meeting with Plaintiff and issued her an unsatisfactory rating for the year for the reason that she had gone to Douyon's supervisor.

29. Plaintiff appealed her rating to the Office of the Chancellor.

30. The rating was upheld on March 15, 2010.

31. Subsequently, the Plaintiff brought Article 78 proceedings in the New York Supreme Court.

32. The DOE, through its counsel, filed a motion to dismiss, at which time, Justice Singh in or around September, 2011, denied the DOE's motion to dismiss on the grounds that the employer failed to follow its own rules.

33. In addition to the above, Plaintiff met with Mr. Wilson (Ms. Siegel's replacement), on July 1, 2009 to request a new supervisor which was denied.

34. Plaintiff and six other colleagues complained to the Chancellor under a provision of the collective bargaining agreement addressing harassment, but notwithstanding the above nothing was done to address the situation.

35. Plaintiff was issued a counseling memo on December 4, 2008, indicating that she had used an "inappropriate tone" in a facially neutral email.

36. On April 6, 2009, Plaintiff was issued one disciplinary letter by Ms. Douyon in which Ms. Douyon asserted by failing to answer questions on April by Ms.

Douyon, and for asking a colleague, Mary Ann Vance, a question three times during a meeting.

37. On June 30, 2009, the last day of school, Ms. Douyon improperly issued a disciplinary letter for not promptly answering an e-mail issued by Douyon to Plaintiff, and not adequately answering Ms. Douyon about the failure in a meeting.

38. Notwithstanding the unsatisfactory rating given by Ms. Douyon to Plaintiff, the following year she gave Plaintiff more responsibility -- increasing her responsibility by 30% to 84 schools, changing schools previously serviced by her.

39. Notwithstanding having given Plaintiff an extreme additional responsibility during 2009-2010, Ms. Douyon continued to complain about the "tone" and imagined lack of respect of Ms. Douyon that plaintiff allegedly demonstrated to Ms. Douyon.

40. On December 1, 2009, Douyon issued Plaintiff a letter that she was talking, and doing work unrelated to the meeting in another meeting. The e-mail advises her to refrain from such behavior in the future.

41. An additional disciplinary letter issued by Ms. Douyon on December 23, 2009 states that Plaintiff engaged in further unprofessional conduct, by failing to follow required procedures, and then refused to acknowledge it when confronted.

42. At the end of that academic year, Douyon again rated Plaintiff unsatisfactory, even though the Plaintiff's duties and responsibilities were increased from the previous year and Douyon acceded to Plaintiff's competency at a hearing.

43. Plaintiff was removed as a Supervisor of Psychologists compelling her to resort to her last tenured position of Psychologist with at least a twenty thousand

($20,000) dollar reduction of pay each year which is compounded by the contractual annual increases the contract provides each Supervisor.

44.     Douyon's actions, as set forth, *inter alia*, were the proximate cause of Plaintiff's termination. Ms. Siegel's failure to monitor and supervise Ms. Douyon was an additional cause of this complaint.

45.     Plaintiff complained to the SDHR that Ms. Douyon's harsh treatment of African-American employees was due to discriminatory animus, as their investigation documented.

46.     The SDHR found Ms. Douyon's harsh treatment of African-American employees was due to her discrimination due to race/color and national origin sufficient to warrant a finding of "Probable Cause."

47.     This treatment was against all African-Americans under Douyon's supervision, not just plaintiff, though plaintiff was the only person to lose her position as Supervisor of Psychologists.

48.     After the Plaintiff was demoted to her last tenured position, she began to search postings from other boroughs to regain her higher position.

49.     Plaintiff went to six interviews.

50.     Plaintiff was informed that she had done extremely well by each of the interviewees.

51.     Upon information and belief, the postings required that each applicant have one year prior experience as supervisor of psychologists.

52.     Upon information and belief, three of the six positions went to persons who had never served as supervisor of psychologists.

53.   On one such interview, on information and belief, right after the interview, the individual who interviewed plaintiff offered her the job. Later Plaintiff received a letter stating, "we regret to inform you that cannot offer you a position at this time."

54.   As a result of the above, Ms. Douyon was excessively and unfairly punitive, disrespectful, and generally cruel to those under her supervision, actually participated in the discriminatory treatment, and aided and abetted the unlawful conduct described herein.

55.   The record at the SDHR establishes that the percentage of employees disciplined by Mrs. Douyon, 75% is substantially higher than the percentage of other employees, 38.7%. The number of African Americans who were punished was twice the amount of any others.

## COUNT I

(Discrimination in Violation of Title VII and 42 U.S.C. 1981)

56.   Plaintiff repeats and realleges each and every allegation in paragraphs 1-55 with the same force and effect as if herein more fully set forth.

57.   Plaintiff is an African-American individual.

58.   Plaintiff suffered an adverse employment action, upon information and belief, based upon her membership in a racial and ethnic minority.

59.   As a proximate result of Defendants' racial and ethnic discrimination against Plaintiff, Plaintiff has suffered and continues to suffer substantial losses, including the loss of past and future earnings, bonuses, deferred compensation, and other employment benefits.

60. As a further proximate result of Defendants' actions, Plaintiff has suffered and continues to suffer severe and lasting embarrassment, humiliation and anguish, and other incidental and consequential damages and expenses.

## COUNT II

(Hostile Work Environment in Violation of Title VII and 42 U.S.C. 1981)

61. Plaintiff repeats and realleges each and every allegation in paragraphs 1-60 with the same force and effect as if herein more fully set forth.

62. Plaintiff was subjected to harassment by Defendants, which was motivated by Plaintiff's race and national origin.

63. Said conduct of Defendants was not welcomed by Plaintiff.

64. Defendant's conduct was motivated by Plaintiff's race and national origin.

65. Said conduct was so severe or pervasive that a reasonable person in Plaintiff's position would find Plaintiff's work environment to be hostile or abusive.

66. Plaintiff believed her work environment to be hostile or abusive as a result of Defendant's conduct.

67. The individual defendants were supervisory employees of the DOE.

68. Said conduct was so pervasive and open that a reasonable employer would have had to be aware of on one occasion involving six employees to the Office of the Chancellor.

## COUNT III

(Retaliation)

69. Plaintiff repeats and realleges each and every allegation in paragraphs 1-68 with the same force and effect as if herein more fully set forth.

70. Defendant, through Ms. Douyon, retaliated against the Plaintiff, on information and belief, pursuant to Federal, City, and State law, and her supervisor Ms. Marlene Siegel let the conduct aforesaid continue notwithstanding being apprised of the circumstances.

## COUNT IV

(Intentional Infliction of Emotional Distress)

71. Plaintiff repeats and realleges each and every allegation in paragraphs 1-70 with the same force and effect as if herein more fully set forth.

72. Defendants, and each of them, are guilty of intentional infliction of emotional distress.

## COUNT VI

(Negligent Supervision)

73. Plaintiff repeats and realleges each and every allegation in paragraphs 1-72 with the same force and effect as if herein more fully set forth.

74. The defendant was guilty of negligent supervision of Ms. Douyon through their supervisor Marlene Siegel.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff respectfully requests that this Court:

(a) Entering a judgment against the individual defendant pursuant 29 U.S.C. § 2615(a) (2) and/or any other applicable section.

(b) Enter a judgment pursuant to 29 U.S.C. § 2617(a)(3) against the defendants;

(c)     Enter a judgment in favor of plaintiff and against defendants for an award of damages in an amount to be determined at trial to compensate plaintiff for loss of income, physical injury, mental anguish, humiliation, embarrassment, and emotional injury;

(d)     Enter judgment in favor of plaintiff for the reasonable attorneys' fees and costs incurred by plaintiff in connection with the instant action;

(e)     Enter a judgment in favor of plaintiff for such further and additional relief as the Court may deem just and proper.

Dated: Bronx, New York
       January 10, 2012

                                        WOLF & WOLF, LLP
                                        Attorneys for Plaintiff

                                        By: _____
                                            Edward H. Wolf (EHW-0656)